GRAVOIS, J.
_jjln this child custody matter, defendant/appellant Dr. Danny Bourgeois appeals a trial court judgment that maintained the parties’ shared custody of their minor son, A.C.B.,[1] but awarded domiciliary status to Dr. Bourgeois’s ex-wife, plaintiff/appellee Dr. Shahrzad Talebine-jad, after she had sought a modification of the parties’ prior Consent Judgment on custody. Dr. Talebinejad sought the custody modification on the basis that A.C.B. was then three and a half years old and would soon be eligible to enroll in a “pre-K 4 program,” and because of her desire to enroll him full time in a pre-kindergarten program in Metairie, Louisiana.
On appeal, Dr. Bourgeois argues that the trial court erred in finding that Dr. Talebinejad proved a material change in circumstances warranting a modification of the previous custody judgment because as a four-year-old, A.C.B. was not of “school age” as per La. R.S. 17:221 and 17:222. He further argues that it is not in A.C.B,’s best interest for A.C.B. to have to travel more than 90 miles twice per day to and from school in Metairie, Louisiana, during the weeks that Dr. Bourgeois exercises physical custody of A.C.B. at his home in Zachary, Louisiana. Next, he argues that the trial court erred in granting Dr. Tale-binejad domiciliary status when she failed to rebut the presumption against custody found in La. R.S. 9:364, specifically that Dr. Talebinejad’s history of violence and abuse towards him is sufficient to deny her domiciliary status. He also argues that the trial court erred in denying his request to admit into evidence an alleged text mes *687 sage between the parties as evidence of her abusive behavior. Finally, he argues that if a modification of the Consent Judgment on custody is warranted, he should be named as domiciliary parent.
|2For the following reasons, finding no merit to Dr. Bourgeois’s assignments of error, we affirm the trial court’s judgment under review.
FACTS AND PROCEDURAL HISTORY
The record reflects that the parties, Dr. Bourgeois and Dr. Talebinejad, met in 2008 in Metairie, Louisiana, when Dr. Bourgeois was a surgical resident at Oehs-ner Hospital in Metairie and Dr. Talebine-jad was a medical student. The parties had a stormy and troubled relationship, and both agreed that the relationship would have ended had Dr. Talebinejad not gotten pregnant in 2011. Prior to being married in October of 2011, the parties resided in Jefferson Parish. A.C.B, their son, was born on April 11, 2012.
After Dr. Bourgeois completed his surgical residency in 2013, he obtained a job as a surgeon at Lane Memorial Hospital in East Baton Rouge Parish. Meanwhile, Dr. Talebinejad entered a surgical residency at Ochsner Hospital in Metairie. In an effort to balance the needs of their careers and their child, in 2013 the parties purchased a home in LaPlace, Louisiana, which was approximately one-third closer to Dr. Bourgeois’s job in Zachary. However, the parties’ relationship continued to be troubled. Dr. Bourgeois was unfaithful several times, which led to numerous fights between the couple, some where Dr. Talebi-nejad lost her temper and admittedly caused some minor property damage at their home, The parties decided to separate and divorce. In June of 2014, Dr. Talebinejad moved back to Jefferson Parish.
Dr. Bourgeois filed for divorce in St. John the Baptist Parish (40th Judicial District Court) on July 7, 2014. On August 21, 2014, the parties entered into a Consent Judgment in the divorce proceeding regarding child custody, with the parents being awarded “joint/shared” custody of A.C.B., with alternating weeks of ^physical custody, and co-domiciliary status.[2] Dr. Bourgeois continued living in LaPlace until April of 2015, when he moved to Zachary, where he is from, to live in his grandmother’s house and to be close to his job and his extended family. The parties were divorced in October of 2015 by judgment of the 40th Judicial District Court. They continued with shared custody under the Consent Judgment, with A.C.B. spending one week at a time in the physical custody of each parent respectively.[3] When with his father, A.C.B. attended Bright Beginnings Day Care, which is close to Dr. Bourgeois’s home in Zachary, where A.C.B. had been enrolled since 2013. When with his mother in Metairie, A.C.B. was cared for by a nanny when his mother worked in her residency.
When A.C.B. approached the age of four and became eligible to enroll in pre-kinder-garten, Dr. Talebinejad sought to enroll *688 him in the program at Metairie Academy, a well-regarded public magnet elementary school close to her home. A.C.B. was accepted into the program, but Dr. Bourgeois disagreed with A.C.B.’s enrollment at Metairie Academy. Initially Dr. Bourgeois felt that their son could remain at day care in Zachary and with the nanny in Metairie and not start school until kindergarten. He later proposed that A.C.B. could attend Metairie Academy every other week, when he was with his mother, or could attend another school in Zachary on the weeks when A.C.B. was with Dr. Bourgeois.
After being unable to resolve the issue of their son’s schooling and custody, on November 12, 2Ó15 Dr. Talebinejad filed a Rule to Show Cause why custody should not be modified, arguing that a modification was warranted given that A.C.B. was then three and a half years old and would soon be eligible to enroll in a U“pre-K 4 program” and that it was in his best interests to attend school full time.[4] She sought domiciliary custody, primary physical custody, and permission to enroll A.C.B. in pre-kindergarten for the 2016-2017 school year in Jefferson Parish, particularly at Metairie Academy.
On February 1, 2016, Dr. Bourgeois filed a reconventional demand, alleging a material change in circumstances since the custody decrees were rendered, seeking to be named domiciliary parent, and seeking an order for permission to enroll A.C.B. in the Zachary Community School District “when he reaches the age of preschool enrollment.”[5] On February 2, 2016, the parties stipulated to the appointment of Dr. Karen Van Beyer to conduct a custody evaluation of the parties and A.C.B. The trial court conducted a custody hearing on July 13, 2016, in which the parties and several witnesses testified, including Dr. Van Beyer, whose report was entered into evidence. The trial court took the matter under advisement and rendered a judgment in open court on July 21, 2016, with the parties present, granting Dr. Talebine-jad’s request to be named as domiciliary parent and giving permission for A.C.B. to be enrolled full time in pre-kindergarten classes at Metairie Academy, but maintaining the parties’ shared week-to-week custody arrangement. A written judgment and reasons for judgment were also rendered that same day.[6] This timely appeal followed.
STANDARD OF REVIEW
As noted by the court in Hanks v. Hanks, 13-1442 (La.App. 4 Cir. 4/16/14), 140 So.3d 208, 214-215 (internal citations omitted):
Uln child custody cases, the following principles are well-settled:
*689 • Appellate courts will not disturb a trial court’s custody award absent a manifest abuse of discretion.
• In most child custody casés, the trial court’s rulings are based heavily on its factual findings. “[A] court of appeal may not set aside a trial court’s or a jury’s finding of fact in the absence of ‘manifest error’ or unless it is ‘clearly wrong.’ ”
• “[E]ach child custody case must be viewed in light of its own particular set of facts and circumstances, with the paramount goal of reaching a decision that is in the best interest of the child.”
• In determining the best interest of the child, “[e]ach case must be viewed in light of the child’s age, the situation of the parents, and any other factor relevant to the particular case,”
• To aid courts in making this factual determination, La. C.C. art. 134 enumerates twelve factors for the court to consider. ...
• The best interest of the child standard—codified in La. C.C. arts. 131 and 134—is “a fact-intensive inquiry requiring the weighing and balancing of factors favoring or opposing custody in the competing parties on the basis of the evidence presented in each case.”
•' .“Because the trial judge is in the , best position to ascertain the best interest of the child based on the particular circumstances of the particular case, the trial court’s custody determination is entitled to great weight and will not be disturbed by an appellate court .absent a clear showing of abuse of discretion.”
When a party seeks to change custody entered pursuant to a consent judgment or stipulation of the parties, the party seeking modification must prove “(1) that there has been a material change of circumstances since the original custody decree was entered, and- (2) that the proposed modification is in the best interest of the child.” Evans v. Lungrin, 97-0541 (La. 2/06/98), 708 So.2d 731, 738 (internal citation omitted). This is a lesser burden of proof than required when a party seeks modification of a “considered decree.”[7] Id.
LLa. C.C. art. 134 provides that the court shall consider all relevant factors in determining the best interest of the child, specifically including:
(1) the love, affection, and other emotional ties between each- party and the child;
(2) the capacity and disposition of each party to give the child love, affection, and spiritual guidance' and to continue the education and rearing of the child;
(3) the capacity and dispositionof each party to provide the child with food, clothing, medical care, and other material needs;
(4) the length of time the child has lived in a stable, adequate environment and the desirability of main *690 taining continuity of that environment;
(5) the permanence, as a family unit, of the existing or proposed custodial home or homes;
(6) the moral fitness of each party, insofar as it affects the welfare of the child;
(7) the mental and physical health of each party;
(8) the home, school, and community history of the child;
(9) the reasonable preference of the child, if the court deems the child to be of sufficient age to express a preference;
(10) the willingness and ability of each party to facilitate and encourage a close and continuing relationship between the child and the other party;
(11) the distance between the respective residences of the parties; and
(12) the responsibility for the care and rearing of the child previously exercised by each party.
These factors have been construed to be nonexclusive, and the trial court has the discretion to determine the relative amount of weight to be given each factor. The court is not required to analyze mechanically all of the dozen factors; rather the court should balance and weigh the factors in view of the evidence presented. Hanks v. Hanks, 140 So.3d at 215 (citing Palazzolo v. Mire, 08-0075 (La.App. 4 Cir. 1/7/09), 10 So.3d 748, 769-70).
|7In its extensive written reasons for judgment, the trial court went through an assessment of each of the Article 134 factors in detail in light of the evidence presented, In doing so, the court found that most of the factors were either not relevant to the present proceeding or weighed equally in favor of both parties. The court found that A.C.B. was equally attached to both parents and it would not be in his best interest to alter the shared custody arrangement. Relevant to the present issue of A.C.B.’s education, however, the trial court found on balance several factors that weighed in favor of granting Dr. Tale-binejad domiciliary status. Specifically, regarding factor two which partially concerns the child’s education, the court had some reservations about Dr. Bourgeois’s “casual attitude” towards deferring A.C.B.’s schooling for an additional year (or until kindergarten), when all indications showed that A.C.B. was very bright and sociable and would benefit from a formal education environment.
The trial court found that factor ten, the willingness and ability to facilitate and encourage a close and continuing relationship between the child and the other party, weighed heavily in favor of Dr. Talebine-jad. Herein, the court noted that each party was reluctant to alter their schedules to fit the other, and that both parties needed to improve the way they communicate. However, the court found that this factor weighed in favor of Dr. Talebinejad, specifically as a result of Dr. Bourgeois’s repeated and continued failure to inform Dr. Talebinejad of important occurrences in A.C.B.’s life, including his weekly attendance at church, his receipt of dental care in the Zachary area, discontinuance by Dr. Bourgeois of A.C.B’s treatment for exercise-induced asthma, and his participation in recreational T-ball. The court found no justification for Dr. Bourgeois’s failure to communicate a basic level of information about A.C.B.’s daily activities to Dr. Tale-binejad, and felt that such behavior reflected an unwillingness to co-parent or to foster a positive relationship between A.C.B. and his mother.
|sThe trial court also found that factor eleven, the distance between the respective residences of the parties, weighed heavily in the court’s decision regarding domicili *691 ary status. The court dismissed as “untenable” Dr. Bourgeois’s suggestion that Dr. Talebinejad forego a year of further education in a surgery fellowship and move to the Zachary area as soon as her residency was completed.[8] The court also noted that Dr. Talebinejad’s educational requirements mandated that she remain in the New Orleans area for the next one to two years and that she had expressed the willingness to be “generously flexible” about her location thereafter, whereas Dr. Bourgeois had been unwilling to be equally flexible. The court further noted that Dr. Bourgeois had “significantly” much more control over his work schedule than Dr. Talebinejad. The court also noted that for two years Dr. Bourgeois was able to accommodate his work schedule in Zachary while living in LaPlace. The court found that by electing to move to Zachary, Dr. Bourgeois chose proximity to work over proximity to his son, and further, that by choosing to move to Zachary, he more than tripled the travel time between himself and his son (ie., between his home in Zachary and Dr. Ta-lebinejad’s home in Metairie). The court also found that based on the “overwhelming evidence” of Dr. Bourgeois’s failure to communicate with Dr. Talebinejad, it found “not credible” his testimony that Dr. Talebinejad had consented to his move to Zachary on behalf of A.G.B.
Based on the foregoing, the trial court awarded the parties continued shared custody with domiciliary status to Dr. Talebi-nejad, and allowed A.C.B. to be enrolled full time in the pre-kindergarten program at Metairie Academy.
[^ASSIGNMENT OF ERROR NO. ONE

“School age” of minor child

Dr. Bourgeois argues first that the trial court erred in determining that his son, at four years old, was of “school age,” citing La. R.S. 17:221(A)(1), which provides that school attendance becomes mandatory in Louisiana at age seven. Alternatively, he argues that state law permits a child to enroll in kindergarten at age five, citing La. R.S. 17:151.3. He further argues that since the trial court’s judgment is fashioned around the “error of law” that his son is of “school age,” this Court should not review the judgment under the “clear abuse of discretion” standard, but rather the less strict manifest error standard, or conduct a de novo review, and that the judgment must be reversed.
Upon review, we find no merit to Dr. Bourgeois’s assertion that the trial court committed legal error in finding, at age four, that A.C.B. was legally “school age.” The judgment found that it was in A.C.B.’s best interest to attend pre-kinder-garten, and thus that Dr. Talebinejad showed a material change of circumstances warranting a modification of custody. The judgment did not hold, nor did the reasons for judgment find, that a four-year-old child is of “school age” under Louisiana law. The statutes Dr. Bourgeois cites in Title 17 of the Revised Statutes merely state at what age school attendance is mandatory or permissive in the State of Louisiana. These statutes do not determine at what age it is in any child’s best interest to attend school. This Court has found no instance in which statutes in Title 17 have been invoked in a custody matter to determine at which age it is in a particular child’s best interest to attend school, nor have those statutes been used in a custody matter to limit a child’s educational opportunities. Further, the statutes in *692 Title 17 do not support Dr. Bourgeois’s claim that it is not in A.C,B.’s best interest to attend school; these statutes provide for educational | ^opportunities for children much younger than seven.[9] Accordingly, Dr. Bourgeois’s reliance on Title 17 is unavailing. We thus find no legal error and decline to conduct a de novo review or review the matter, under the manifest error standard, rather than for a clear abuse of discretion standard.
In brief to this Court, as well as in the trial court in his reconventional demand, Dr. Bourgeois argued that A.C.B. should remain in his current setting until he was five, which was day care/nanny care, or alternatively should attend pre-kindergar-ten in Zachary rather than in Metairie, and stay with the nanny while in Metairie. This position undercuts Dr. Bourgeois’s assertion in his brief that it is not in his child’s, best interest to attend school or that he is not of “school age.” The record clearly reflects that both parties believe that A.C.B. should attend pre-kindergar-ten; the only dispute was where he should attend and perhaps how often (full time or every other week).
Upon review, we find that the law and the evidence support the trial court’s finding that it was in the best interest of A.C.B. to attend a pre-kindergarten program, and that this is a change in his circumstances warranting a modification of custody. The evidence is compelling that A.C.B. is of sufficient age, knowledge, social skills, and ability to attend a prekindergarten program. The parties agreed to the appointment of Dr. Van Beyer, a licensed social worker and qualified expert in child development, family therapy, and custody evaluations, to conduct an evaluation in this case. Dr. Van Beyer rendered a written report recommending that A.C.B. be allowed to enroll in Metairie Academy’s pre-kindergarten full time. She testified that A.C.B. was an exceptionally bright and sociable child who would benefit from attending a pre-kindergarten program.[10] 1 nShe explained that in the present day, pre-kindergarten was no longer a luxury, but had become “an expectation” in a child’s educational program..She testified that she was familiar with the quality reputation of the pre-kindergarten program at Metairie Academy. She was unable to compare it to the pre-kindergarten program in Zachary that Dr. Bourgeois preferred, because he did not submit any information about it for her to consider in her evaluation.[11] She felt that it was in A.C.B.’s best interest to attend Metairie Academy full time rather than on alternate weeks, because the program involved “sequential” teaching and learning, and A.C.B. would be at a disadvantage if he missed material every other week. Dr. Van Beyer testified that attending one school full time would provide stability for A.C.B. Dr. Van Beyer also testified that it would not ultimately matter to A.C.B.’s educational success if *693 A.C.B. were to forego pre-K and to stay in his current arrangement, but that she felt because he was so bright, he would in fact benefit from attending pre-kindergarten at Metairie Academy.
In summary, under the particular facts of this case, we find no legal error in the trial court’s determination that it was in the best interest of A.C.B. to attend prekindergarten, and that there has thus been a material change in circumstances warranting a modification in custody (naming Dr. Talebinejad as domiciliary parent and allowing A.C.B. to be enrolled full time at Metairie Academy). This assignment of error is without merit.
ASSIGNMENT OF ERROR NO. TWO

Travel distance for minor child to and from school

Next, Dr. Bourgeois argues that it is not in the best interest of the child to have to travel more than 90 miles twice per day to school during the weeks that Dr. Bourgeois exercises custody of A.C.B. at his home in Zachary. However, the | iacustody judgment in question contained no such requirement. The trial court’s judgment found that the evidence showed that Dr. Bourgeois had much more control over his work schedule than Dr. Talebinejad has at this point in her career. The court also noted that Dr. Bourgeois had commuted to work in Zachary for over a year from the parties’ marital home in LaPlace, and that he had unilaterally decided- to move to Zachary, thus approximately tripling the distance between Dr. Talebinejad’s home in Metairie and his home in Zachary.
Dr. Bourgeois also asserts in this assignment of error there is no empirical or evidentiary support for Dr. Talebinejad’s claim that A.C.B. should attend school full time. However, we find the evidence clearly supports the contrary. The report and the expert testimony of Dr. Van Beyer clearly stated that it would not be in A.C.B.’s best interest to attend a sequential learning program, pre-kindergarten, on an alternating week basis. This assignment of error is without merit.
ASSIGNMENT OF ERROR NO. THREE

“Violent behavior” presumption against custody

In this assignment of error, Dr. Bourgeois argues that the trial court erred in awarding Dr. Talebinejad domiciliary status when she failed to rebut the presumption found in La. R.S. 9:364[12] against awarding sole or joint custody to a “parent who has a history of perpetrating family violence.” Specifically, he argues that Dr. Talebinejad’s violent behavior towards him is sufficient to deny her domiciliary status.
Initially, we note that La. R.S. 9:364, entitled “Child custody; visitation,” is found in the Post Separation Family Violence Relief Act, and that neither party sought its application in the proceedings below. The record shows, instead, that in August of 2014, the parties entered into a Consent Judgment of shared custody that hiiPr. Bourgeois did not seek to modify on any basis until Dr. Talebinejad filed her motion seeking domiciliary status.
In its written reasons for judgment, the trial court specifically found the following in analyzing factor seven, the moral fitness *694 of each parent as it affects the welfare of the child, to-wit:
Again, this factor does not weigh heavily in favor of one party over the other. Bourgeois attempted several times, and at great length, to show that Talebinejad had an anger management problem. All he succeeded in showing is that Talebinejad became extremely upset when confronted with his infidelity. While such bursts of anger are not appropriate, they are certainly unsurprising given the circumstances. Regardless, it was well established that these incidents were isolated, occurred prior to the August 2014 consent judgment, were related to the break-up of the marriage, and in no way impacted Talebinejad’s fitness as a mother or her relationship with [A.C.B.].
Upon review, we find no merit to Dr. Bourgeois’s claim that Dr. Talebinejad is unfit for custody because of her temper. The record is clear that the instances of Dr. Talebinejad’s anger and acting out in a violent manner stemmed from her being confronted with numerous instances of Dr. Bourgeois’s infidelity. The record is equally clear that these “violent” instances were confined to a time frame prior to the parties’ separation in June of 2014, and that no evidence was presented of instances of violence occurring after their separation. Dr. Talebinejad testified frankly that she did, in fact, throw things and damage some property (a picture frame, a wall) during arguments with Dr. Bourgeois before the parties separated, and that she might have threatened self-harm as well. She also claimed that he was also similarly violent during their arguments. After interviewing the parties, Dr. Van Beyer was aware of these instances and considered them in the context of the parties’ marital relationship, as well as within her evaluation of child custody. She opined that Dr. Talebinejad had no pathology or “diagnosis” as a violent person, that her behaviors, while inappropriate, were confined to the parties’ deteriorating marital relationship, and that she was fit to have custody of her child. Noteworthy, |uDr. Bourgeois testified at the hearing that he believes Dr. Talebine-jad is a “decent mother,” a “good mother,” and that she “loves” A.C.B. He also stated that he did “not have a problem at all with her having my child 50 percent of the time.”
Perhaps the most significant fact against Dr. Bourgeois’s position in this assignment of error is that in August of 2014, shortly after the parties’ separation and more recent in time to the instances of Dr. Talebi-nejad’s angry behavior, the parties entered into a shared custody Consent Judgment. It is thus specious for Dr. Bourgeois to be concerned with Dr. Talebinejad’s past temper-induced behavior now, but to have been unconcerned with these same behaviors in 2014 when the parties entered into the shared custody Consent Judgment.
In conclusion, the evidence in the record does not support Dr. Bourgeois’s assertion in this proceeding that Dr. Talebinejad has a violent or abusive nature, or that she should not exercise shared custody or have domiciliary status on this basis. This assignment of error is without merit.
ASSIGNMENT OF ERROR NO. FOUR

Denial of introduction of evidence

In this assignment of error, Dr. Bourgeois contends that the trial court erred at the hearing in this matter in denying his request to admit into evidence a printed representation of a text message ostensibly sent by Dr. Talebinejad to him around August of 2013 for the purpose of showing that she was violent and abusive. *695 The trial court denied the text message’s admission into evidence on the grounds that the printout of the text message was not properly authenticated under La. C.E. art. 901.[13]
11fiDr. Bourgeois proffered into evidence a printout of a purported phone text message allegedly sent to him by Dr. Talebine-jad wherein she threatened him and others with physical harm. He argues that his testimony that he received the text message from Dr. Talebinejad and that the message contained the contact label “Wi-fey” is sufficient under Article 901 to authenticate the text.
Upon review, we find no error in the trial court’s ruling that the text message in question was not properly authenticated under La. C.E. art. 901. The text printout itself contains no objective evidence of the date it was allegedly sent by Dr. Talebine-jad to Dr. Bourgeois.[14] The sender’s telephone number is not identified on the printout, but only the contact label “Wi-fey.” We find, as did the trial court, that Dr. Bourgeois failed to present sufficient evidence to support a finding that the “text” in question was what it purported to be.[15] This assignment of error is without merit.
ASSIGNMENT OF ERROR NO. FIVE

Domiciliary custody should have been awarded to Dr. Bouryeois

In his last assignment of error, Dr. Bourgeois argues that if a modification of custody is warranted, he should be designated as domiciliary parent instead of Dr. Talebinejad. In brief, he argues that he has a full support system in place consisting of day care and his mother’s help. He contrasts that with Dr. Talebinejad’s longer and more demanding work hours and that her mother would be A.C.B.’s primary caregiver if domiciliary custody were granted to her. He also argues that the ruling leaves A.C.B. “primarily” with a parent who has “violent tendencies,” and that the trial court erred in granting Dr. Talebinejad domiciliary custody merely because she believes the child should be in school full time.
| ifiThis Court notes that the judgment at issue awards “joint/shared” custody, but grants domiciliary status to Dr. Talebine-jad. It is clear that the judgment maintains each parent’s 50/50 shared time with A.C.B. Therefore, Dr. Bourgeois’s assertion that the modification leaves A.C.B. “primarily” with Dr. Talebinejad is incorrect.[16] The issue of Dr. Talebinejad “violent tendencies” has been addressed infra *696 and has been found to have no merit. Also, we find Dr. Bourgeois’s comparison of the parties’ respective child care support systems to be a factor that weighs equally in favor of both, as did the trial court. Both parties work full time in a relatively demanding field, surgery, and both have outside help (“support systems”) that are similar. Dr. Bourgeois uses day care and his mother to care for A.C.B. when he can’t; Dr. Talebinejad relied on a nanny before A.C.B. entered school and would rely on A.C.B.’s school and her mother in the event the ruling under review is upheld. Dr. Talebinejad is no less the child’s “primary caretaker” than is Dr. Bourgeois. This assignment of error is without merit.
This Court feels compelled to point out that “domiciliary” status, in the context of this joint/shared custody judgment, does not mean that the domiciliary parent has more custody time with the child than the non-domiciliary parent. Rather, “domiciliary” status gives that particular parent decision making authority unless an implementation order provides otherwise, subject to review of the trial court upon motion of the other parent. La. R.S. 9:335(B)(3).[17]
CONCLUSION
For the foregoing reasons, the trial court’s judgment under review is affirmed.
AFFIRMED

. To ensure the confidentiality of the minor whose interests are the subject matter of this appeal, the minor’s initials have been used in place of the minor's name in this opinion to protect the minor’s identity. Uniform Rules-Courts of Appeal, Rule 5-2.

. This custody arrangement was kept in place by another judgment rendered in the divorce proceeding on October 24, 2014 (which was signed on December 30, 2014).

. The Consent Judgment also provided that each parent had the right to exercise a midweek evening of visitation, though the record reflects that this tended to be problematic for each to exercise after Dr. Bourgeois moved to Zachary, given the amount of hours each was working and the approximately 92-mile distance between the two homes after Dr. Bourgeois moved from LaPlace to Zachary, The evidence suggests that the mid-week visitation was not regularly exercised by either party.

.Dr. Talebinejad’s petition was styled “Petition for Recognition of Intrastate Judgment of Child Custody; Rule to Show Cause Why There Should Not Be a Modification of Custody; Petition for Registration and Confirmation of Support Order Pursuant to Article 2786; Rule to Show Cause Why Danny Paul Bourgeois, Jr. Should Not Be Held in Contempt." Previous to this appeal, Dr. Bourgeois challenged the transfer of the matter to Jefferson Parish. The trial court ruled that venue was proper in Jefferson Parish, and further declined to grant Dr. Bourgeois’s request for a forum non conveniens transfer to East Baton Rouge Parish. Upon review, this Court denied Dr. Bourgeois’s writ application, upholding the trial court’s rulings. See Bourgeois v. Bourgeois, 16-54 (La. App. 5 Cir. 2/1/16) (unpublished writ decision).

. The Zachary Community School District is a public school district. The reconventional demand did not define “when he reaches the age of preschool enrollment.”

, The written judgment also provided for additional provisions of custody, none of which are involved in this appeal.

. "A considered decree is an award of permanent custody in which the trial court receives evidence of parental fitness to exercise care, custody, and control of children. When a trial court has made a considered decree of permanent custody, the party seeking a change bears a heavy burden of proving that the continuation of the present custody is ‘so deleterious to the child as to justify a modiñcation of the custody decree,' or of proving by ‘clear and convincing evidence that the harm likely to be caused by the change of environment is substantially outweighed by its advantages to the child.’ ” Evans v. Lungrin, 708 So.2d at 738 (internal citations omitted) (emphasis in original). In the present case, it is undisputed that the custody judgment in question was not a "considered decree.” -

. Dr. Talebinejad testified that when her residency was completed in mid-2017, she desired to apply for a fellowship of 1-2 years for further training in trauma surgery. She states in brief to this Court that she is now participating in this fellowship.

. For instance, La. R.S. 17:151.3 sets forth the ages that a child in Louisiana may attend a kindergarten program, and La. R.S. 17:407.21, et seq., known as the "Louisiana Early thildhood Education Act,” provides educational opportunities for children as young as four.

. Stacey Betz, the owner of Bright Beginnings Day Care, a "highly rated developmentally appropriate educational facility” where A.C.B. has attended since he was approximately one and a half years old during his weeks with his father, also testified that A.C.B. was a "very bright young man,”

.In his reconventional demand, Dr. Bourgeois supported A.C.B.’s enrollment in the Zachary Community School District, which is public. At the time of the hearing on this matter, however, Dr. Bourgeois presented evidence that he sought A.C.B.'s enrollment in Central Private Academy, a private school near his home.

. La. R.S. 9:364(A) provides, in pertinent part, that "[t]here is created a presumption that no parent who has a history of peipetrat-ing family violence shall be awarded sole or joint custody of children.”

. La. C.E. art 901(A) provides that "[t]he requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims.”
La. C.E. art 901(B) provides ten examples of authentication or identification conforming with the requirements of this Article, which examples specifically are “[b]y way of illustration only, and not by way of limitation.”

. Counsel for Dr. Bourgeois stated that he hand wrote the date “8/31/13” on the document in question. Dr. Bourgeois testified that he was only “pretty sure” that was the date he received it.

. We further note, as did Dr. Talebinejad in brief, that even if the text message in question had been admitted into evidence, it bore no relevance in the instant proceeding as to whether a material change in circumstances occurred warranting a modification in custody, as the text was purportedly sent a full year before the parties entered into the August 21, 2014 Consent Judgment granting shared custody.

. At the hearing on this matter, however, Dr. Bourgeois testified that he did not have a problem with Dr. Talebinejad having shared custody.

. La. R.S. 9:335(B)(3) provides: "The domiciliary parent shall have authority to make all decisions affecting the child unless an implementation order provides otherwise. All major decisions made by the domiciliary parent concerning the child shall be subject to review by the court upon motion of the other parent. It shall be presumed that all major decisions made by the domiciliary parent are in the best interest of the child.”