BENNY COUNCIL         *       NO. 2019-CA-1049

VERSUS               *

                           COURT OF APPEAL

TAMEKA COLLINS       *

LIVINGSTON              FOURTH CIRCUIT

                 *

                           STATE OF LOUISIANA

* * * * * * *

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2014-00672, DIVISION "K"
Honorable Bernadette D'Souza, Judge
* * * * * *
**Judge Rosemary Ledet**
* * * * * *
(Court composed of Judge Rosemary Ledet, Judge Sandra Cabrina Jenkins, Judge
Dale N. Atkins)


Richard Lynn Ducote
318 East Boston Street, 2nd Floor
Covington, LA 70433

      COUNSEL FOR PLAINTIFF/APPELLANT


Jennifer C. Carter
DE BLANC LAW FIRM, LLC
1615 Poydras Street, Suite 910
New Orleans, LA 70112

      COUNSEL FOR DEFENDANT/APPELLEE


                           **AMENDED AND,
                           AS AMENDED, AFFIRMED**

                           **March 13, 2020**

This is a child custody case. Pursuant to a considered decree (the September 7, 2016 judgment), the parents of a minor, BDC,[1] were granted joint custody; and the mother was designated as the domiciliary parent. This appeal arises out of a subsequent, revised custody judgment, dated August 14, 2019, which continued joint custody, maintained the mother as the domiciliary parent, and expanded the father's visitation rights. The primary issue presented is whether the trial court abused its discretion in determining that the best interest of the child dictated the mother's designation as the domiciliary parent be maintained.[2] Finding no abuse of

---

[1] In this opinion, we use the minor child's initials, rather than his full name, to protect his privacy. *See* Uniform Rules, Courts of Appeal, Rules 5-1 and 5-2*; see also* La. Ch. C. art. 412.

[2] Although Mr. Council states in his brief that he also challenges the trial court's failure to award him sole custody, he neither assigns that issue as error nor briefs it. We, thus, deem the sole custody issue waived. *See* Uniform Rules, Courts of Appeal, Rule 2-12.4(B)(4) (providing that "[a]ll assignments of error and issues for review must be briefed. The court may consider as abandoned any assignment of error or issue for review which has not been briefed"); *see also Yokum v. Funky 544 Rhythm & Blues Cafe*, 16-1142, p. 12, n. 3 (La. App. 4 Cir. 5/23/18), 248 So.3d 723, 735 (observing that "'if an appellant identifies an assignment of error or an issue presented for review, but fails to brief that point with citations to the record and support in the law, that issue or assignment is deemed waived'") (quoting *McMaster v. Progressive Sec. Ins. Co.*, 14-0155, pp. 6-7 (La. App. 4 Cir. 10/29/14), 152 So.3d 979, 983).

discretion, we affirm the trial court's determination to maintain the mother as the domiciliary parent.[3]

## FACTUAL AND PROCEDURAL BACKGROUND

Benny Council and Tamika[4] Collins Livingston—both Louisiana attorneys and both New Orleans residents[5]— are the parents of BDC, who is now seven years old. The couple began dating. Approximately four years later, on April 19, 2012, BDC was born. Less than two years after BDC was born, the couple's relationship ended. The couple has never cohabitated or married. BDC has always lived with Ms. Livingston. Ms. Livingston allowed Mr. Council to visit the child at her home—the St. Charles Condo—whenever he wanted until after this litigation commenced.[6]

In January 2014, Mr. Council commenced this litigation by filing a "Petition to Establish Paternity, Custody, and Visitation"; Mr. Council sought joint custody and co-domiciliary parent status. Ms. Livingston answered and reconvened; she sought joint custody and domiciliary parent status. Following a custody evaluation by a court-appointed evaluator and a three-day custody trial, the trial court, on

---

[3] As discussed elsewhere in this opinion, we amend the judgment to delete the order setting a review hearing as improper and, as amended, affirm the judgment.

[4] The record on appeal contains various spellings of Ms. Livingston's first name—Tamika and Tameka. We use Tamika—the spelling used by the trial court judge in its judgment and reasons for judgment.

[5] For eleven years, Ms. Livingston resided in a condominium on St. Charles Avenue in New Orleans (the "St. Charles Condo"); she moved from there at some point in 2018—the year before the trial. At trial, Ms. Livingston testified that she and BDC were living temporarily with Ms. Livingston's mother in Bogalusa, Louisiana.

[6] According to Ms. Livingston's appellee brief, this arrangement "continued until the [first] custody trial."

September 7, 2016, rendered judgment as follows: (i) awarding the parties joint custody and designating Ms. Livingston as domiciliary parent; (ii) establishing a graduated physical custody schedule for Mr. Council, during which time a parent-child play therapist would work with Mr. Council and BDC;[7] (iii) ordering Mr. Council and Ms. Livingston to attend therapy—individual psychotherapy for each parent; (iv) denying Mr. Council's request to appoint a parenting coordinator; and (v) ordering Mr. Council to pay $573.44 in monthly child support. On Mr. Council's appeal, this court affirmed all aspects of the September 7, 2016 judgment with one exception—this court reversed the child support award and remanded for recalculation of the support award. *Council v. Livingston*, 16-1228 (La. App. 4 Cir. 9/20/17), ___ So.3d ___, 2017 WL 4161681, *writ denied*, 17-1773 (La. 12/5/17), 231 So.3d 30.

---

[7] The September 7, 2016 judgment established the following graduated physical custody schedule for Mr. Council:

> • For one month, one hour of unsupervised visitation on Tuesday and Thursday, and two hours on Saturday and Sunday each week;

> • For one month, one hour of unsupervised visitation on Tuesday and Thursday, and three hours on Saturday and Sunday each week;

> • For two months, three hours of unsupervised visitation on Tuesday, Thursday, Saturday, and Sunday each week;

> • For three months, three hours of unsupervised visitation on Tuesday and Thursday, and six hours on Saturday and Sunday each week;

> • For five months, three hours of unsupervised visitation on Tuesday and Thursday, and overnight from Saturday at 10:00 a.m. to Sunday at noon;

> • Thereafter, unsupervised visitation on alternating weekends with Mr. Council picking up BDC after school on Fridays, and returning him to school on Monday morning.

The judgment also established an alternating physical custody schedule based on ten holidays per year.

Attempts to implement the graduated physical custody schedule ordered in the September 7, 2016 judgment proved to be unworkable for various reasons.[8] On March 21, 2019, Mr. Council filed a Rule to Modify Custody. In his rule, Mr. Council alleged that, since the entry of the September 7, 2016 judgment, the following material changes had occurred:

- Ms. Livingston's situation [had become] completely chaotic, as she [was] inexplicably residing at various hotels with the child, and she [had] even slept in a car with him;

- Despite explicit court orders to the contrary requiring her to allow Mr. Council to exercise the custody time awarded him, Ms. Livingston [had] continuously prohibited Mr. Council from having any relationship, contact, communication, or custody time, despite his repeated demands. Consequently, Mr. Council's only time with his son [occurred] at the child's school;

- Ms. Livingston's [then-]current living situation and the underlying causes thereof [were] unquestionably grossly contrary to the child's best interests, and [posed] a [grave] risk of harm to him;

- Ms. Livingston [had] bizarre psychotic-like episodes where she [claimed] to be someone from the past, sent to the present time to protect Mr. Council. This gross mental instability [posed] a clear [threat] to the child's safety and welfare;

- Ms. Livingston [had] secreted the minor child from Mr. Council, including changing the child's school without notifying or consulting with Mr. Council, admittedly to prevent any contact by the child with his father;

- Ms. Livingston's instability [had] caused her to miss payments on the child's tuition; and

- Ms. Livingston's father and brother [had] consistently intimidated and threatened Mr. Council, with the encouragement of Ms. Livingston, requiring reports to the New Orleans Police Department.

---

[8] According to Ms. Livingston, "[t]he parties came to an impasse, and the visitation stopped." The impasse was due, at least in part, to the parties' disagreement over a provision in the September 7, 2016 judgment ordering that visitation that cannot take place because of the child's illness will be made up the following weekend. Both parties have filed contempt motions; however, those motions are not before us on this appeal.

4

Mr. Council contended that the child's best interest required that the September 7, 2016 judgment be modified to grant him sole custody with Ms. Livingston granted "such visitation that is documented to be safe and appropriate, after the reasons for such chaos in her life are diagnosed and treated." Alternatively, Mr. Council contended that the September 7, 2016 judgment should be modified to designate him as the domiciliary parent and to limit Ms. Livingston's custody time. He contended that all of the La. C.C. art. 134 factors supported this modification.

In response, Ms. Livingston filed exceptions of no cause of action and vagueness. In support, she argued that Mr. Council failed to directly link any change in circumstances to an actual effect on BDC. She alleged that "[a]ll allegations relate to Ms. Livingston and not the child" and that "it is unclear what harm if any Mr. Council is alleging has been experienced by the child." Along with her exceptions, Ms. Livingston filed a motion to have Martha Bujanda appointed as parenting coordinator pursuant to La. R.S. 9:358.4.

On July 24, 2019, the exceptions and the rule to modify were heard. After the trial court overruled Ms. Livingston's exceptions, a one-day trial of Mr. Council's Rule to Modify was held. At trial, Mr. Council called two witnesses— himself and Ms. Livingston. At the end of Mr. Council's case, Ms. Livingston moved for an involuntary dismissal, which the trial court denied. Ms. Livingston then called two witnesses—herself and her father. Following the trial, the trial court took the matter under advisement.

On August 14, 2019, the trial court issued a judgment granting Mr. Council's Rule to Modify and ordering as follows:

5

- The parties continue to share joint legal custody of BDC with Ms. Livingston designated as the domiciliary parent;

- Ms. Bujanda be appointed as the parenting coordinator, pursuant to La. R.S. 9:358.4;

- There be a detailed, determinate,[9] gradually increasing visitation schedule for Mr. Council;

- Commencing on September 6, 2019, Mr. Council have physical custody of BDC on alternating weekends from 5:00 p.m. on Friday until 8:00 a.m. on Monday, with Mr. Council picking up the child from camp or school or after school activity, and returning the child to school or camp on Monday morning;

- Once the alternating weekend schedule commenced a detailed schedule of alternating holidays would become effective and that "either parent may attend any school, medical, sports game, or any other event of BDC";

- Both parties "shall continue in therapy as ordered in this court's original custody ruling and the parenting coordinator may contact either/both counselors for the parents should any issues arise where such contact is necessary."

- There be a "75-mile radius of the Civil District Court courthouse" limitation[10] on either party's ability to travel with BDC without the advance written and signed consent of the other parent; and

- The parties attend a review hearing on March 5, 2020, at which "the Court may, in its discretion, modify this judgment and enter such Orders or decrees warranted."

This appeal by Mr. Council followed.

## DISCUSSION

On appeal, Mr. Council raises two issues:[11] (i) the trial court's failure to

apply the La. C.C. art. 134 best-interest-of-the-child factors (the "Article 134

_____

[9] Unlike the September 7, 2016 judgment, the August 14, 2019 judgment outlines the specific date and time of each visit and is not linked to any type of therapy between Mr. Council and BDC.

[10] The limitation also applies to travel to another state or outside of the court's jurisdiction.

[11] Mr. Council framed his assignment of errors as follows:

6

Factors")[12] in determining whether to maintain Ms. Livingston as the domiciliary

parent; and (ii) the trial court's improper setting of a review hearing. We separately

address each issue.

---

- The trial court manifestly erred as a matter of law and abused its discretion in maintaining [Ms.] Livingston as the child's domiciliary parent, when the record clearly demonstrates that Ms. Livingston's mental state and living situation are extremely fragile and unstable, that no reasonable assessment of the C.C. art 134 best interest factors could favor her as the domiciliary parent, and that the trial judge ignored the art. 134 factors.

- The trial court, while entering the final child custody judgment, clearly erred as a matter of law in setting a "review hearing" at a set future date, "*wherein the Court may, in its discretion, modify this judgment and enter such Orders or decrees warranted.*"

[12] La. C. C. art. 134, as amended in 2018, provides as follows:

A. Except as provided in Paragraph B of this Article, the court shall consider all relevant factors in determining the best interest of the child, including:

(1) The potential for the child to be abused, as defined by Children's Code Article 603, which shall be the primary consideration.

(2) The love, affection, and other emotional ties between each party and the child.

(3) The capacity and disposition of each party to give the child love, affection, and spiritual guidance and to continue the education and rearing of the child.

(4) The capacity and disposition of each party to provide the child with food, clothing, medical care, and other material needs.

(5) The length of time the child has lived in a stable, adequate environment, and the desirability of maintaining continuity of that environment.

(6) The permanence, as a family unit, of the existing or proposed custodial home or homes.

(7) The moral fitness of each party, insofar as it affects the welfare of the child.

(8) The history of substance abuse, violence, or criminal activity of any party.

(9) The mental and physical health of each party. Evidence that an abused parent suffers from the effects of past abuse by the other parent shall not be grounds for denying that parent custody.

(10) The home, school, and community history of the child.

(11) The reasonable preference of the child, if the court deems the child to be of sufficient age to express a preference.

(12) The willingness and ability of each party to facilitate and encourage a close and continuing relationship between the child and the other party, except when objectively substantial evidence of specific abusive, reckless, or illegal conduct

7

*The Article 134 Factors—Modification of Domiciliary-Parent Designation*

Mr. Council contends that the trial court erred, legally and factually, in rejecting his request to be designated domiciliary parent. Legally, he contends that the trial court erred in ignoring the Article 134 Factors in rejecting his request to be designated as domiciliary parent. Factually, he contends that no reasonable assessment of the Article 134 Factors could favor maintaining Ms. Livingston as domiciliary parent and that the trial court abused its discretion in making that determination.[13] Ms. Livingston counters that there was a reasonable basis for the trial court's decision to maintain her as domiciliary parent and, thus, its decision should be affirmed.[14]

---

has caused one party to have reasonable concerns for the child's safety or well-being while in the care of the other party.

(13) The distance between the respective residences of the parties.

(14) The responsibility for the care and rearing of the child previously exercised by each party.

B. In cases involving a history of committing family violence, as defined in R.S. 9:362, or domestic abuse, as defined in R.S. 46:2132, including sexual abuse, as defined in R.S. 14:403, whether or not a party has sought relief under any applicable law, the court shall determine an award of custody or visitation in accordance with R.S. 9:341 and 364. The court may only find a history of committing family violence if the court finds that one incident of family violence has resulted in serious bodily injury or the court finds more than one incident of family violence.

[13] The jurisprudential requirements of *Bergeron v. Bergeron*, 492 So.2d 1193 (La.1986), apply to actions to modify custody rendered in considered decrees. *AEB v. JBE*, 99-2668, p. 7 (La. 11/30/99), 752 So.2d 756, 761. The parties do not dispute that the September 7, 2016 judgment is a considered decree; hence, the *Bergeron* jurisprudential requirements apply here. In its reasons for judgment, the trial court found that Mr. Council met the *Bergeron* requirements. Given Mr. Council's sole argument pertains to the Article 134 Factors, we find it unnecessary to reach the issue of whether the *Bergeron* requirements were met.

[14] Ms. Livingston also counters that Mr. Council is legally barred from challenging the domiciliary-parent designation. She points out that Mr. Council did not appeal the physical custody schedule, granting her primary physical custody and him alternating weekends. Continuing, she cites the definition of domiciliary parent in La. R.S. 9:335(B)(2)—the parent with whom the child shall primarily reside. Given that definition of domiciliary parent in La. R.S. 9:335(B)(2), Ms. Livingston contends that Mr. Council cannot be designated the domiciliary parent. It follows, she contends, that Mr. Council has no legal basis for challenging

The best-interest-of-the-child standard governs all child custody determinations, including the determination of whether to modify the domiciliary-parent designation. *State through Dep't of Children & Family Servs., Child Support Enforcement v. Knapp*, 16-0979, p. 28 (La. App. 4 Cir. 4/12/17), 216 So.3d 130, 148. As the Louisiana Supreme Court has observed, "the overarching inquiry in an action to change custody is 'the best interest of the child.'" *Tracie F. v. Francisco D.*, 15-1812, p. 2 (La. 3/15/16), 188 So.3d 231, 235.[15] As this court has observed, "[t]he best interest of the child standard—codified in La. C.C. arts. 131 and 134—is 'a fact-intensive inquiry requiring the weighing and balancing of factors favoring or opposing custody in the competing parties on the basis of the evidence presented in each case.'" *Alfonso v. Cooper*, 14-0145, p. 22 (La. App. 4 Cir. 7/16/14), 146 So.3d 796, 810 (quoting *Hanks v. Hanks*, 13-1442, pp. 8-9 (La. App. 4 Cir. 4/16/14), 140 So.3d 208, 215) (internal citations omitted)).

To assist trial courts in making the best interest of the child determination, the Legislature codified the Article 134 Factors. *Id.* In so doing, however, the

_____

the trial court's ruling. This argument erroneously conflates the concepts of legal and physical custody.

The term "custody" is broken down into two components—legal and physical (or actual) custody. *Hodges v. Hodges*, 15-0585, pp. 6-7 (La. 11/23/15), 181 So.3d 700, 705. Domiciliary parent status, in the joint custody context, refers to decision-making authority; it is a legal custody concept. *See Bourgeois v. Bourgeois*, 16-676, p. 16 (La. App. 5 Cir. 4/12/17), 218 So.3d 684, 696. Although La. R.S. 9:335(B)(2) provides that the domiciliary parent is the parent with whom the child shall primarily reside, La. R.S. 9:335(A)(2)(b) provides that to the extent that it is feasible and in the best interest of the child, physical custody of the child should be shared equally. Thus, "the fact that a parent is the domiciliary parent does not necessarily mean that the parent has physical custody of the child for a greater percentage of time." *Hansbrough v. Hansbrough*, 10-0846 (La. App. 1 Cir. 9/24/10) (*unpub.*), 2010 WL 3724735, *5. Merely because Ms. Livingston has greater physical custody does not mandate that she be designated the domiciliary parent. Mr. Council, thus, has preserved this issue for review.

[15] *See* La. C.C. art. 131 (providing that "[i]n a proceeding for divorce or thereafter, the court shall award custody of a child in accordance with the best interest of the child"); *see also AEB*, 99-2668, p. 7, 752 So.2d at 761 (observing that "Comment (d) to article 131 states that the article should be followed in actions to change custody as well as in those to initially set it").

9

Legislature expressly stated that the factors were intended to be non-exclusive, providing that "[t]he court shall consider *all* relevant factors in determining the best interest of the child." La. C.C. art. 134 (emphasis supplied).

The language of La. C.C. art. 134 is dispositive of Mr. Council's argument that the trial court erred in ignoring the Article 134 Factors. The article does not direct a court to any particular factor, not even to the fourteen factors enumerated in the article. Instead, the article directs a court to consider "all relevant factors." La. C.C. art. 134. Indeed, "the Revision Comments to Art. 134 indicate that while former versions of this article required a trial court to consider all of the factors in determining whether the evidentiary presumption in favor of joint custody was rebutted, the current revision indicates that the factors are simply a guide to the court in making a 'best interest' determination." *Braud v. Braud*, 18-0874, p. 5 (La. App. 4 Cir. 12/12/18), 261 So.3d 950, 954.

The argument that Mr. Council raises here—that the Article 134 Factors are exclusive and must be considered by the trial court—has been uniformly rejected by the jurisprudence. *Alfonso*, *supra*. It is well-settled that the trial court is "not required to analyze mechanically all of the [fourteen] [16] factors; rather the court should balance and weigh the factors in view of the evidence presented." *Id*. Stated otherwise, "the trial court is not required to provide a literal articulation of each of

---

[16] From 1993 to 2018, the Article 134 Factors remained the same. "In 2018, Act 412 was passed, which added two additional factors and expounded on two existing factors, all with a focus on potential abuse that could affect a child. Best interest is now defined in fourteen, rather than twelve, factors, but the factors remain illustrative, so any fact having a bearing on the child should be considered in the court's analysis." Monica Hof Wallace, *A Primer on Child Custody in Louisiana*, 65 LOY. L. REV. 1, 82 (2019) (footnote omitted); *see also Taylor v. Taylor*, 306 Md. 290, 303, 508 A.2d 964, 970 (1986) (observing that "[f]ormula or computer solutions in child custody matters are impossible because of the unique character of each case, and the subjective nature of the evaluations and decisions that must be made" and that "no single list of criteria will satisfy the demands of every case").

the factors of La. C.C. art. 134 in reaching its conclusion regarding the best interest of the children, nor is the trial court required to specifically explain its weighing and balancing of the article 134 factors." *Manno v. Manno,* 49,533, p. 14 (La. App. 2 Cir. 11/19/14), 154 So.3d 655, 663. Mr. Council's argument that the trial court legally erred in ignoring the Article 134 Factors, thus, is unpersuasive.

Absent a legal error, a trial court's child-custody determination is reviewed under an abuse of discretion standard. *Jaligam v. Pochampally*, 16-0249, p. 5 (La. App. 4 Cir. 12/7/16), 206 So.3d 298, 302 (citing *Leard v. Schenker*, 06-1116, p. 3 (La. 6/16/06), 931 So.2d 355, 357). As the Louisiana Supreme Court has observed, the abuse of discretion standard is "'a higher standard of deference' than the manifest error standard, applicable to cases where 'the substantive law vests a high degree of discretion in the trial judge.'" *Gathen v. Gathen*, 10-2312, p. 10, n. 4 (La. 5/10/11), 66 So.3d 1, 8 (quoting 1 Frank L. Maraist, LOUISIANA CIVIL LAW TREATISE: CIVIL PROCEDURE, § 14:14 (2d ed. 2008)). The more deferential abuse-of-discretion standard applies here.

Mr. Council contends that the trial court abused its discretion in maintaining Ms. Livingston as domiciliary parent. According to Mr. Council, no reasonable assessment of the Article 134 Factors could favor Ms. Livingston, given her extremely fragile mental state coupled with her unstable living situation. In support of his allegation that Ms. Livingston's mental state is extremely fragile, he cites her inability to recall, at trial, basic details that a well-functioning adult should be able to recall. For example, he cites her inability to recall the addresses where she had stayed with BDC during the prior year. He contends that her testimony establishes "serious psychological concerns." In support of his allegation that Ms. Livingston's living situation is unstable, Mr. Council cites his testimony that BDC

11

expressed stress over his and Ms. Livingston's nomadic living arrangement. Mr. Council also relies on the photograph of Ms. Livingston sleeping in the back of a car that he introduced at trial.

Ms. Livingston, on the other hand, contends there was a reasonable basis for the trial court's decision to maintain her as domiciliary parent. In support, she cites her testimony that BDC enjoyed the experience of living in different places. At trial, Ms. Livingston explained that since she moved out of the St. Charles Condo, sometime during 2018, she and BDC have stayed in several short-term rentals.[17] As to the photograph of her sleeping in the back seat of a car, Ms. Livingston explained that she was waiting at school for BDC, who had soccer after school that day, and that she was meditating, not sleeping. Ms. Livingston also explained that due to Mr. Council's behavior, which included stalking, she did not want him to know where she and BDC were living pending a judicial decision regarding visitation.

In rejecting Mr. Council's request to modify the domiciliary parent designation, the trial court, in its written reasons for judgment, observed that it weighed the following relevant factors in making the best interest of the child determination:

- The court finds that a child of any age should have meaningful contact with both parents, provided that a parent has the reasonable ability to address the needs of the child. Moreover, it is this court's view that a child should have regular contact with both parents absent evidence of abuse (physical or sexual) or other dangerous behaviors; such is a fact sensitive inquiry and is different in every case. No evidence of abuse has been presented in the case at bar.[18]

---

[17] As noted elsewhere in this opinion, at the time of trial, Ms. Livingston and BDC temporarily were living with her mother in Bogalusa, Louisiana.

[18] Mr. Council suggests that La. C.C. art. 134 (A)(1) applies here given not only the nomadic life BDC has been living, but also "the ongoing presence of a registered sex offender in his maternal

12

- [Ms.] Livingston tries to make much of the fact that [Mr. Council] was "kidnapped" by his father when he was a child of tender-years and brought to New Orleans from the mid-Atlantic region of the United States. He has been here ever since. [Ms. Livingston] asserts that such makes it a potentially dangerous situation, to-wit, that [Mr. Livingston] will kidnap [BDC] and remove him from the jurisdiction of this court. . . . The court understands the concerns but finds them overblown. They can be addressed by placing objective limitations in the judgment which the court will do.[19]

- [Mr. Council] asserts [Ms. Livingston] is unstable and has a strange living arrangement, staying in hotels and other venues with the child. The court will agree that [Ms. Livingston's] current living arrangements and those of [BDC] are a bit unusual. The court has seen stranger living arrangements in the past and the children have thrived, even excelled as a result.

Given the circumstances of this child custody case, we find the following statement aptly describes the deference due the trial court's best-interest-of-the-child determination:

> In child custody cases where two parents are fervently competing for custody and domiciliary status of the children, frequently the trial court must determine the best interest of the children solely from the testimony of the parents and their respective relatives or friends. This naturally passionate and self-interested testimony is rarely objective, leaving it to the trial court, who is in the best position to view firsthand the demeanor and tone of the witnesses, to assess the credibility of the witnesses and decide how much weight to give the testimony in light of the factors of La. C.C. art. 134.

---

grandfather's home." He contends that given these facts, "there is certainly more of a potential for the child to be abused while in his mother's custody than in his father's." This argument is speculative.

At trial, Ms. Livingston acknowledged that her brother-in-law, who is a registered sex offender, lives at her father's house. Ms. Livingston testified that BDC visits her father's house, but he never spends the night there. She further testified that BDC is never in her brother-in-law's presence at her father's house. She still further testified that they have seen her brother-in-law at family gatherings and "things like that but [BDC] has never been in the presence of her [brother-in-law] at her father's house." Ms. Livingston's father also corroborated her testimony that BDC visits, but never spends the night at, his house.

[19] The "75-mile restriction" in the judgment serves this purpose. Moreover, we note that Ms. Livingston's concerns regarding Mr. Council being kidnapped as a child were addressed by the court-appointed evaluator and discussed at the earlier custody trial.

*Abrams v. Turner*, 52,922, p. 10 (La. App. 2 Cir. 9/25/19), 282 So.3d 304, 312. Such is the case here.

Nothing in the record indicates that the trial court abused its discretion in finding it was in the best interest of the child to maintain Ms. Livingston as the domiciliary parent. At trial, the parties presented conflicting testimony regarding the effect of Ms. Livingston's nomadic living arrangement on BDC. Mr. Council testified it was stressful for BDC; Ms. Livingston testified it was exciting for BDC. Both parties characterized BDC as a happy child and agreed that BDC was excelling in school. Indeed, BDC's recent report card, which was introduced at trial, corroborated that he has excelled in school.

Insofar as Mr. Council's allegation that Ms. Livingston's mental condition is fragile, Mr. Council neither requested a mental health evaluation pursuant to La. R.S. 9:331 nor presented any other professional evidence regarding Ms. Livingston's mental condition.[20] Instead, he relied solely on Ms. Livingston's trial testimony. The trial court heard Ms. Livingston's testimony and, based on that testimony, made its factual findings. Moreover, the trial court ordered that the provision in the earlier judgment requiring that both parties attend therapy—individual psychotherapy for each parent—be continued.

_____

[20] La. R.S. 9:331 provides:

> A. The court may order an evaluation of a party or the child in a custody or visitation proceeding for good cause shown. The evaluation shall be made by a mental health professional selected by the parties or by the court. The court may render judgment for costs of the evaluation, or any part thereof, against any party or parties, as it may consider equitable.

> B. The court may order a party or the child to submit to and cooperate in the evaluation, testing, or interview by the mental health professional. The mental health professional shall provide the court and the parties with a written report. The mental health professional shall serve as the witness of the court, subject to cross-examination by a party.

Based on our review of the record, we cannot conclude the trial court abused its vast discretion in maintaining Ms. Livingston as domiciliary parent.

*Improper Setting of Review Hearing*

Mr. Council contends that, as a matter of law, a review hearing is improper in a child custody case. In support, he cites the jurisprudence holding that review hearings can be held in juvenile cases, pursuant to La. Ch. C. art. 1454,[21] but not in civil custody cases.[22] Ms. Livingston likewise contends that there is no basis for the trial court setting a review date. She also emphasizes that either party can file a motion to modify if any major issue arises regarding the child's welfare. We agree.[23] Accordingly, we amend the judgment to delete the order setting the review hearing.

_____

[21] La. Ch. C. art. 1454 provides as follows:

> A. The court may at any time upon application or upon its own motion order a new hearing to be held in order to determine whether the involuntary status of the minor patient should be continued.

> B. Minor patients committed judicially shall have their cases reviewed in a hearing every one hundred twenty days.

> C. The review hearing shall be conducted according to the procedures and standards set forth in this Chapter and may be held by the juvenile court in the parish in which the minor patient is being confined or, if not confined, by the juvenile court in the parish in which he resides or may be found. The hearing shall not be transferred to another district except for good cause shown.

[22] *See Brown v. Mock*, 43,571, p. 6 (La. App. 2 Cir. 7/16/08), 987 So.2d 892, 895 (citing *Brown v. Brown*, 05-1346, p. 5 (La. App. 3 Cir. 3/1/06), 925 So.2d 662, 666; and *R.J. v. M.J.*, 03-2676, pp. 14-15 (La. App. 1 Cir. 5/14/04), 880 So.2d 20, 28-29 (observing that "'review hearings' can be held in juvenile cases as set forth in La. Ch. C. art. 1454, not in civil custody cases"); *see also Beene v. Beene*, 43,845, p. 8 (La. App. 2 Cir. 10/22/08), 997 So.2d 169, 174.

[23] Explaining why review hearings are appropriate in juvenile cases and inappropriate in civil custody cases, the court in *Frase v. Barnhart*, 379 Md. 100, 120-21, 840 A.2d 114, 126 (2003), observed:

> It is common—and in some instances required—for juvenile courts, in dealing with children who have been found in need of assistance (CINA), to have periodic review hearings to monitor the progress of the child, the child's parents, and any other guardian or potential custodian. In that setting, of course, the child has already come under the direct jurisdiction and supervision of the court and

15

## DECREE

For the foregoing reasons, the judgment of the trial court is amended to delete the order setting a review hearing and, as amended, is affirmed.

**AMENDED AND, AS AMENDED, AFFIRMED**

---

may well be in the legal custody of the court. By statute, the court's comprehensive jurisdiction extends until either the child turns 21 or the jurisdiction is affirmatively terminated by the court. The context, which justifies the direct and continuing supervision of the court, is that, as part of the CINA finding, the court has determined that court intervention is required to protect the child's health, safety, and well-being.

The court's role is different in a normal private custody dispute. It is to take evidence and decide the dispute, so that the child and the other parties can get on with their lives. The court does not retain jurisdiction until the child turns 21, or even 18. Although the matter of custody, visitation, and support may always be reopened upon a showing of changed circumstances, the court's jurisdiction over the particular dispute ends when the dispute is resolved, which the law anticipates will occur within a reasonable time after the evidentiary hearing. Those kinds of cases are not to be strung out indefinitely, as though they were CINA cases.

For good cause, the court may hold a case open for a reasonable period to consider additional evidence, not available at trial but which the court finds necessary to a proper decision. What it may not do, however, is to proceed to make findings that would dictate a particular result and then subject the favored party to conditions inconsistent with that result and to continuing review hearings. When it does that, the case never ends; the child and the parties remain under a cloud of uncertainty, unable to make permanent plans. The court seemingly reserves the power to alter the custody arrangement at any time, even in the absence of a new or amended petition, based on a later review of circumstances known or predicted to exist at the time of the initial determination. That is procedurally impermissible.

*Id.* (citations omitted). Nonetheless, a commentator has expressed a contrary view. *See* 1 Robert Lowe, LA. PRAC. DIVORCE § 7:72 (March 2019 Update) (observing that "[a] trial court which determines custody may be unable to retain jurisdiction to review the matter after it enters its award . . . because such retention conflicts with *Bergeron's* requirement of a change in circumstances and its policy of avoiding repetitive litigation" and commenting that "[t]his approach is perhaps too restrictive, failing to consider the trial court's duty to act as a fiduciary on behalf of children pursuant to *Turner v. Turner*, 455 So.2d 1374 (La. 1984)").